638 P.2d 740

**STATE of Arizona, Respondent,**

v.

**Edward ROBERTSON, Petitioner.**

**No. 1 CA–CR 5097–PR.**

Court of Appeals,
Division 1, Department A.

Oct. 29, 1981.

Rehearing Denied Dec. 16, 1981.

Review Denied Jan. 6, 1982.

---

Charles F. Hyder, former Maricopa County Atty. by William B. DeMars, Jr., Deputy County Atty., Phoenix, for respondent.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for petitioner.

## OPINION

OGG, Judge.

Edward Eugene Robertson was indicted in 1977 on an open charge of murder relating to the death of his wife's boyfriend. He pled guilty to a charge of second degree murder and was sentenced to a term of ten to eleven years imprisonment. No appeal was ever taken from the judgment of conviction or the sentence.

Robertson began these proceedings by filing a petition for post-conviction relief with the trial court pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 32. He received appointed counsel who filed additional pleadings. The trial court determined that an evidentiary hearing was not required and summarily denied the petition. A subsequent timely motion for rehearing was likewise denied, and the matter is before this court upon the filing of a timely petition for review. Rule 32.9.c. We proceed to review those issues preserved in the motion for rehearing.[1]

---

1. Rule 32.9.a; *State v. Ramirez*, 126 Ariz. 464, 616 P.2d 924 (App.1980); *State v. Moore*, 125 Ariz. 528, 611 P.2d 115 (App.1980); *State v.*

Petitioner alleges that with his allowance for "good conduct time" under A.R.S. § 31–251(B)[2] and "earned work credits" under A.R.S. § 31–252(A)[3], the expiration date of his sentence originally was computed to be December 10, 1982, and that his "mandatory release" pursuant to A.R.S. § 31–411(B)[4] was computed to be June 10, 1982. This computation allowed for "earned work credits" pursuant to A.R.S. § 31–252 during the period of "mandatory release." Thereafter, on about November 1, 1978, the Department of Corrections issued a letter to all inmates advising that prisoners on "mandatory release" would not be eligible for "earned work credits" during the period of "mandatory release." Petitioner was then given a new computation which extended his maximum discharge date to March 10, 1983 and his "mandatory release" date to September 10, 1982. The net effect of the change in policy was to add three months to the time that petitioner and all other prisoners would serve before being given their "mandatory release." The issue thus presented is whether petitioner is entitled to earn "work release credits" under A.R.S. § 31–252 during the period of "mandatory release."

The "double time" statute at issue here, A.R.S. § 31–252(A), provides as follows:

A. A prisoner under commitment to the department, while working on the public highways or the prison farms as a trusty outside the prison walls and without requiring armed guards, *or performing any other assignment of confidence and trust either within or without the prison walls or pursuant to rules and regulations established by the department,* shall be allowed double time while so employed, and each day so employed shall be counted as two days in computing time on his or her sentence which shall be deducted, from the maximum term of such prisoner's sentence. (emphasis supplied)

*McFord,* 125 Ariz. 377, 609 P.2d 1077 (App. 1980).

**2.** As amended Laws 1970, Ch. 112, § 2; Laws 1974, Ch. 137, § 1.

The pertinent provisions of the "mandatory release" statute, § 31–411, provide as follows:

B. . . . Every prisoner shall be temporarily released according to the rules and regulations of the department one hundred and eighty days prior to the expiration of the maximum sentence and shall remain under control of the department of corrections until expiration of the maximum term specified in the sentence. If the offender violates such rules and regulations, the releasee without further process may be returned to custody and the board pursuant to § 31–252 may forfeit time credit deductions allowed prior to the violation of such rules and regulations.

The purpose of this "mandatory release" provision is to maintain some control over a prisoner at the end of his prison term, to facilitate a somewhat gradual return to the community and to provide the prisoner with a supervised reintegration into society. *State v. Walden,* 126 Ariz. 333, 615 P.2d 11 (App.1980); *Tyree v. Moran,* 113 Ariz. 275, 550 P.2d 1076 (1976).

■ The Department of Corrections is enforcing the statutes in a manner contrary to the position of petitioner, as illustrated by Department of Corrections Regulation R5–1–310, as follows:

Inmates placed on furlough, work release or temporary release status other than mandatory release are deemed to be prisoners serving their sentences outside of the institution in a position of trust and confidence and are thus entitled to all time credits allowed by A.R.S. §§ 31–251 and 31–252. Such time credits are subject to disallowance or forfeiture in accordance with other established procedures. Inmates placed on mandatory release are not entitled to time credits dur-

**3.** As amended Laws 1974, Ch. 137, § 2.

**4.** As amended Laws 1970, Ch. 210, § 3; Laws 1974, Ch. 137, § 4.

ing the 280 [sic: 180] day mandatory release. Any infraction of institutional rules committed by an inmate returning from a temporary release and observed by the receiving institution staff member will be processed in the normal manner.

We agree with the Department of Corrections' interpretation of the statutes that a prisoner on "mandatory release" pursuant to § 31–411(B) is not "performing any other assignment of confidence and trust either within or without the prison walls or pursuant to rules and regulations established by the department" and is therefore not entitled to the double time credits set forth in § 31–252(A).

■ It is clear that prisoners in custody of the Department of Corrections, even if working, are not necessarily entitled to any two-for-one credit under A.R.S. § 31–252, unless they are actually performing an assignment of confidence and trust within the meaning of that statute. *See Batchan v. State ex rel. Eyman,* 5 Ariz.App. 160, 424 P.2d 202 (1967), (no two-for-one credit for labor during the first 60-day period of incarceration while in "quarantine" unless actually placed in a position of trust); *Walsh v. State ex rel. Eyman,* 104 Ariz. 202, 450 P.2d 392 (1969), (no double time credit where prisoner was outside bounds of state prison under extradition to another state, because he was not performing "an assignment of confidence and trust with respect to his imprisonment"); *Jones v. State ex rel. Eyman,* 19 Ariz.App. 26, 504 P.2d 949 (1972), (no such credit for time spent in county jail prior to commitment). Further, it is discretionary with the administration of the state prison who shall be assigned to a job receiving two-for-one time under A.R.S. § 31–252; there is no absolute right to work at a position of confidence and trust in the prison. *Hogan v. Arizona Board of Pardons and Paroles,* 108 Ariz. 472, 501 P.2d 944 (1972). Clearly, a prisoner under "mandatory release" via A.R.S. § 31–411 has not been placed in a "position of trust or confidence." The statute by its terms is mandatory, and does not allow the Department of Corrections any discretion as to which prisoners shall be released for the 180-day period. That such persons on the 180-day release status have not been placed in a "position of trust or confidence" is further borne out by Regulation R5–1–310 of the Department of Corrections, as set forth above.

■ Additionally, we note that the rule contended for by petitioner would create an unworkable situation as to time computations. Two-for-one credits are not applied (credited) until they have actually been earned, and are not applied prospectively. *Von Hecht v. Eyman,* 1 Ariz.App. 594, 405 P.2d 904 (1965); *see Arnold v. Moran,* 114 Ariz. 335, 560 P.2d 1242 (1977); *Tyree v. Moran, supra.* If petitioner's rule was adopted, he and all others similarly situated would be released three months early without having actually earned any of that three-month period in credits.

■ Finally, we disagree with petitioner that denial of the "earned work credits" to those on "mandatory release", and not to those on furloughs, work releases, or other temporary releases constitutes a violation of the equal protection clause of the Fourteenth Amendment. The Fourteenth Amendment does not deny a state the power to treat different classes of persons in different ways as long as a classification is reasonable. *State v. Arnett,* 119 Ariz. 38, 579 P.2d 542 (1978). We see nothing unreasonable in giving two-for-one credit as an incentive to those who earn a position of trust and confidence within the prison population, and denying such a benefit to the entire prison population who, by virtue of § 31–411(B) will mandatorily be released six months prior to the expiration of their sentence in furtherance of a general legislative policy of supervised reintegration into society.

Although not raised by the parties, we have a serious question as to whether the issues presented in this petition come within

the grounds for relief as specified in rule 32.1, Rules of Criminal Procedure. However, we have concluded that petitioner's grounds are meritless. The trial court's conclusion that petitioner was not entitled to any relief was fully warranted, and its action in denying the rule 32 petition was therefore correct and is affirmed.

Review granted; relief denied.

CONTRERAS, P. J., and CORCORAN, J., concur.